**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**No. 25-10356-CC**

---

**ALEX EL BACHIRI**
*Plaintiff-Appellant*

**v.**

**MEDICREDIT, INC. and**
**MD NOW MEDICAL CENTERS, INC.**
*Defendants-Appellees*

---

On Appeal from the United States District Court
for the Southern District of Florida
No. 0:24-cv-61592

---

# APPELLANT'S OPENING BRIEF

---

**NEWHART LEGAL, P.A.**
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd. #1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile: (561) 473-2946

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Bachiri, Alex El – Appellant

Bavaro, Matthew – Counsel for Appellant

Dimitrouleas, William P. – Honorable District Court Judge

Krassner, Jessica – Counsel for Appellant

Newhart, Darren – Counsel for Appellant

O'Malley, Drew – Counsel for Appellees

Loan Lawyers, LLC – Counsel for Appellant

MD Now Medical Centers, Inc. d/b/a MD Now Urgent Care (Appellee) - MD Now Medical Centers, Inc. is a wholly owned subsidiary of MD Now Holdings, Inc. No publicly traded company owns 10% or more of Defendant MD Now Medical Centers, Inc.'s stock.

Medicredit, Inc. (Appellee) - Medicredit, Inc. is a wholly owned subsidiary of Parallon Revenue Cycle Services, Inc. No publicly traded company owns 10% or more of Defendant Medicredit, Inc.'s stock.

Newhart Legal, P.A. – Counsel for Appellant

Spencer Fane LLP – Counsel for Appellees

s/Darren R. Newhart
**NEWHART LEGAL, P.A.**
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd. #1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile: (561) 473-2946
*Counsel for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Bachiri respectfully submits that oral argument is unnecessary. The issues presented regarding Article III standing are firmly established, and further argument would not assist the Court in deciding this appeal.

# TABLE OF CONTENTS


**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

STATEMENT REGARDING ORAL ARGUMENT ........ i

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 2

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 3

I. MD Now and Medicredit repeatedly attempt to collect a debt from Mr. Bachiri for a medical procedure that never happened ........ 3

II. MD Now and Medicredit force Mr. Bachiri to file this lawsuit ........ 5

STANDARD OF REVIEW ........ 6

SUMMARY OF THE ARGUMENT ........ 7

ARGUMENT ........ 8

Mr. Bachiri suffered concrete injuries ........ 8

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**


*Glynn Envtl. Coalition, Inc. v. Sea Island Acq., LLC*,
26 F.4th 1235 (11th Cir. 2022) .......... 7

*Harris v. Evans*,
20 F.3d 1118 (11th Cir. 1994) .......... 8

*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) .......... 2, 6, 7, 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 8

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) .......... 6

*Pedro v. Equifax, Inc.*,
868 F.3d 1275 (11th Cir. 2017) .......... 6, 7, 10

*Preisler v. Eastpoint Recovery Group, Inc.*,
No. 20-CV-62268-RAR, 2021 WL 2110794
(S.D. Fla. May 25, 2021) .......... 6, 10, 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 8

*Toste v. Beach Club at Fontainebleau Park Condo. Assn., Inc.*,
No. 21-14348, 2022 WL 4091738 (11th Cir. Sept. 7, 2022) .......... 10, 11

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) .......... 7

*Walters v. Fast AC, LLC*,
60 F.4th 642 (11th Cir. 2023) .......... 2, 6, 7, 9, 11


**Statutes & Other Authorities:**


12 C.F.R. § 1006 .......... 2

15 U.S.C. §§ 1692–1692p .......... 2

15 U.S.C. § 1692e(2)(A) .......... 5

15 U.S.C. § 1692e(10) ........................................................................................ 5
28 U.S.C. § 1291 ............................................................................................... 2
28 U.S.C. § 1331 ............................................................................................... 2
Fla. Stat. § 559.72(9) ........................................................................................ 5

## INTRODUCTION

What began as a simple visit to MD Now's urgent care clinic turned into a stressful ordeal that wasted Mr. Bachiri's time disputing a debt for a procedure that never happened and subjected him to emotional distress from an unjustified collection campaign.

Mr. Bachiri visited MD Now's urgent care clinic to have stitches removed. He paid upfront for the services, and after MD Now left him waiting for hours, he asked for and received a refund. He then had the stitches removed elsewhere. But several weeks later, MD Now began billing Mr. Bachiri for a procedure its doctors never performed.

Despite multiple disputes from Mr. Bachiri, MD Now refused to fix the problem and instead enlisted a debt collector, Medicredit, Inc., to further hound him with collection letters. Mr. Bachiri then tried disputing the debt with MediCredit, but it insisted on continuing to collect.

These collection efforts forced Mr. Bachiri to waste even more time contesting the false debt and consulting counsel about his rights—all while enduring mounting frustration, stress, embarrassment, and anxiety.

With no other choice, Mr. Bachiri sued MD Now and Medicredit to stop the collection efforts and for violating state and federal consumer protection laws. But the district court slammed the courthouse door, concluding that injuries like—"frustration,

stress, anxiety, surprise, shock, embarrassment, [and] wasted time"—were insufficient for Article III standing. This ruling conflicts with well-established Eleventh Circuit precedent recognizing that wasted time and emotional distress from disputing illegitimate debts are concrete injuries sufficient for standing. *See Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023) (holding that wasted time and emotional distress are "garden-variety injuries in fact under Article III"); *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (holding that emotional distress and wasted time are concrete injuries). Because the district court's ruling departs from clear, binding precedent, this Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this case involves a claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p, and its implementing regulation, Regulation F, 12 C.F.R. § 1006. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291. The district court entered its order granting dismissal for defendants on January 3, 2025. Dkt. 22. Mr. Bachiri timely filed a notice of appeal on February 3, 2025. Dkt. 23.[1]

[1] All references to the docket are to the district court docket. Page numbers refer to the page number that appears in the header generated by the district court's electronic filing system.

## STATEMENT OF THE ISSUES

Did the district court err in holding that Mr. Bachiri suffered no concrete injuries sufficient for standing, despite the time he wasted disputing a false debt, the time he wasted consulting an attorney to learn his legal rights, and experiencing emotional distress?

## STATEMENT OF THE CASE

### I. MD Now and Medicredit repeatedly attempt to collect a debt from Mr. Bachiri for a medical procedure that never happened.

**1.** In early 2024, Mr. Bachiri suffered a cut that required stitches. Dkt. 12 at 2. He visited MD Now's walk-in urgent care clinic where medical staff closed his wound and instructed him to return two weeks later for stitch removal. *Id.* Following these instructions, Mr. El Bachiri returned two weeks later to have the stitches removed. *Id.* Right after walking through the door, MD Now's representative asked Mr. Bachiri to pay upfront for this procedure. *Id.*

After taking his money, MD Now's doctors left Mr. Bachiri stranded in the waiting room for nearly two hours without providing any care. *Id.* Frustration mounting, Mr. Bachiri approached the front desk and asked MD Now's staff for a refund so he could get treatment elsewhere. *Id.* After the staff refunded his payment, Mr. Bachiri left and had the stitches removed elsewhere. *Id.*

Weeks later, MD Now billed Mr. Bachiri for services it knew never occurred—an error reflected in its own records—and sent collection letters demanding payment

of the phantom debt. *Id.* at 2-3. Each collection letter dragged Mr. Bachiri back into a dispute, forcing him to waste valuable personal time contacting MD Now and disputing a debt it admitted he did not owe. *Id.* at 3.

Rather than fix its mistake, MD Now doubled down—hiring the debt collector Medicredit to chase this illegitimate debt. *Id.* Medicredit then hounded Mr. Bachiri with additional collection letters, falsely insisting the debt was valid. *Id.*; Dkt. 12-2. Each time he received a letter, he was forced to waste more time disputing the false debt, repeatedly telling Medicredit that he did not owe any debt. *Id.* Despite his efforts, Medicredit refused to relent, responding with a letter stating that it had "reviewed all relevant information ... and conducted an investigation" and "determined that the balance on the account is accurate and your responsibility." Dkt. 12-2. The relentless pursuit of this false debt left Mr. Bachiri frustrated.

With no resolution in sight and Medicredit refusing to back down, he had no choice but to consult an attorney to understand his legal rights regarding this unlawful collection conduct. Dkt. 12 at 4. This, too, required Mr. Bachiri to waste more time consulting counsel, explaining the situation, and asking about a resolution to a debt he never owed in the first place. *Id.*

Mr. Bachiri's experience was not just a financial inconvenience, it was an ongoing ordeal that affected his emotional well-being. What should have been a simple medical visit instead spiraled into a prolonged battle over a false debt, causing

him shock, embarrassment, frustration, stress, and anxiety. *Id.* at 3-4. The ongoing dispute understandably drained his time, energy, and peace of mind, forcing him to fight for a resolution to a problem he never should have faced. *Id.*

## II. MD Now and Medicredit force Mr. Bachiri to file this lawsuit.

**2.** Unable to get MD Now and Medcredit to stop hounding him for a debt they knew he did not owe, Mr. Bachiri sued MD Now and Medicredit for violating state and federal consumer protection laws. *See generally* Dkt. 12. He alleges MD Now violated the Florida Consumer Collection Practices Act ("FCCPA") by attempting to collect a debt it knew was illegitimate. *Id.* at 4–5 (citing Fla. Stat. § 559.72(9) ("In collecting consumer debts, no person shall… [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.")). He further alleges Medicredit violated the Fair Debt Collection Practices Act ("FDCPA") by similarly trying to collect on the illegitimate debt. *Id.* at 6 (citing 15 U.S.C. §§ 1692e(2)(A), 1692e(10)).

After amending the complaint, MD Now and Medicredit moved to dismiss, in part, arguing Mr. Bachiri lacked Article III standing. Dkt. 16. Mr. Bachiri responded, arguing that he has Article III standing because he suffered concrete and particularized injuries, including wasted time and emotional distress, as a direct result of MD Now and Medicredit's unlawful debt collection efforts. Dkt. 20.

3. Despite all of Mr. Bachiri's wasted time, the effort he spent disputing the debt, and the emotional toll it wreaked on him, the district court held that Mr. Bachiri lacked Article III standing to sue MD Now and Medicredit to stop them from collecting the invalid debt. Dkt. 22. In the court's view, the harms Mr. Bachiri suffered—wasted time and effort disputing the debt and emotional distress—were not "tangible" injuries and therefore were not sufficient for Article III standing. *Id.* at 6. The only authority the court cited for its conclusion was a single, unpublished district court decision in which the plaintiff argued that he had standing to challenge a debt collection letter as "misleading without claiming that he was misled." *Preisler v. Eastpoint Recovery Group, Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *5 (S.D. Fla. May 25, 2021). The court did not explain how that decision applies here. Nor did it explain how its decision that Mr. Bachiri's wasted time and emotional distress are not concrete injuries could be squared with this Court's decision in *Walters*, 60 F.4th at 648; *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017); and *Losch*, 995 F.3d at 943 holding otherwise.

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant of dismissal for lack of standing. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc). At the pleading stage, the Court "accept[s] as true the allegations in the complaint and attached exhibits and draw[s] all reasonable inferences in favor of the

plaintiffs." *Glynn Envtl. Coalition, Inc. v. Sea Island Acq., LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

## SUMMARY OF THE ARGUMENT

The district court's ruling is not just incorrect—it conflicts with Eleventh Circuit law. This Court has squarely—and repeatedly—held that being "forced to spend time disputing [a] debt" is a "concrete, particularized harm." *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023); *see Losch*, 995 F.3d at 943 ("[T]here is no question that wasted time is a concrete harm ...."); *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) ("lost time attempting to resolve ... credit inaccuracies" is a "concrete injur[y]" (alteration omitted)). The same is true of the emotional distress unlawful debt collection causes a consumer. *See, e.g.*, *Walters*, 60 F.4th at 648 (consumer "identified ... concrete, particularized harm[]" in that "he felt anxious, exploited, embarrassed, and worthless"); *Losch*, 995 F.3d at 943 ("Losch has shown a concrete injury in the form of the emotional distress" caused by inaccurate debt).

Mr. Bachiri suffered the same harms that this Court has over and over again held are sufficient for standing: He wasted time disputing MD Now and Medicredit's attempts to collect an unlawful debt; he wasted time consulting counsel to understand his rights under the law; and he suffered emotional distress in the form of stress, frustration, anxiety, and embarrassment. Because the district court's ruling directly

conflicts with binding Eleventh Circuit precedent recognizing these exact harms as concrete injuries, this Court should reverse.

## ARGUMENT

The goal of Article III standing is to ensure "that litigants have a concrete stake in the outcome of the proceedings such that the issues will be framed properly." *Harris v. Evans*, 20 F.3d 1118, 1123 (11th Cir. 1994). Accordingly, standing has three requirements: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The only element of standing at issue here is the first: whether Mr. Bachiri suffered a concrete injury. He did.

### Mr. Bachiri suffered concrete injuries.

**1.** Mr. Bachiri suffered concrete harms, including wasted time disputing the debt, wasted time consulting counsel, and emotional distress due to MD Now and Medicredit's wrongful collection attempts.

MD Now forced Mr. Bachiri to waste time disputing a false debt. After receiving MD Now's collection letters for a medical procedure that never occurred, Mr. Bachiri repeatedly contacted MD Now to explain the error and dispute the debt, wasting time and causing frustration. Dkt. 12 at 2-3. Rather than resolving the issue, MD Now ignored his disputes and escalated the matter to Medicredit, forcing him to continue

engaging in unnecessary, time-consuming efforts to clear his name. Dkt. 12 at 3.

Then, Medicredit prolonged the ordeal, subjecting Mr. Bachiri to further wasted time and frustration. After Medicredit sent its initial collection letter, Mr. Bachiri contacted Medicredit to dispute the debt and explain he owed nothing—only to be ignored. Dkt. 12 at 3-4. Despite the objections, Medicredit continued sending collection letters falsely claiming Mr. Bachiri owed money. *Id.* This forced him into a cycle of repeated disputes where he wasted time and endured unnecessary aggravation, stress, and anxiety. *Id.* at 4.

With no resolution in sight, Mr. Bachiri had no choice but to consult legal counsel to understand his rights and stop MD Now and Medicredit's collection efforts. *Id.* at 4.

Beyond wasting time, MD Now and Medicredit's wrongful collection efforts caused Mr. Bachiri emotional distress. Being repeatedly pursued for a debt he did not owe caused ongoing frustration, stress, and embarrassment. Dkt. 12 at 3-4. Each new collection letter brought fresh frustration and renewed anxiety. *Id.* The escalation of collection efforts and the embarrassment of being falsely placed in collections understandably resulted in these emotional harms. *Id.*

It's well-established that these harms—wasted time and emotional distress—are concrete injuries sufficient to support standing. *See Walters*, 60 F.4th at 648 (holding that wasted time and emotional distress are "garden-variety injuries in fact under

Article III."); *Pedro*, 868 F.3d at 1280 (holding that time lost "attempting to resolve the credit inaccuracies" is injury in fact); *Losch*, 995 F.3d at 943 ("Losch has shown a concrete injury in the form of the emotional distress and time he spent contesting the inaccurate information."); *Toste v. Beach Club at Fontainebleau Park Condo. Assn., Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022) (finding injury in fact where plaintiff wasted time in initial consultation with attorney to learn his legal rights regarding the debt).

**2.** The district court cited none of these cases—let alone explain how its conclusion—that wasted time and emotional distress are not concrete injuries—could possibly be consistent with this Court's precedent. Instead, the court relied on a single unpublished district court decision in which the plaintiff "generally allege[d]" that a debt collection letter was "misleading without claiming he was misled." *Preisler v. Eastpoint Recovery Group, Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *5 (S.D. Fla. May 25, 2021). That is not Mr. Bachiri's claim here.

Here, MD Now and Medicredit hounded Mr. Bachiri, trying to collect money from him that he did not owe for a procedure he did not have. And Mr. Bachiri, having repeatedly spent time trying unsuccessfully to dispute the debt—frustrated, stressed, and embarrassed by the collection effort—and had to eventually resort to suing. Again, these harms are precisely the kinds of harms that this Court has held are sufficient for standing.

And even if *Preisler* were on point, an unpublished district court decision cannot overturn circuit precedent. Indeed, the unpublished district court decision on which the lower court relied predates this Court's decision in *Walters*, which, once again, reiterates this Court's well-established rule that wasted time and emotional distress are each sufficient for standing. *Walters*, 60 F.4th at 648.[2] Those are precisely the injuries Mr. Bachiri suffered. He therefore has standing.

## CONCLUSION

The district court erred in dismissing Mr. Bachiri's claims for lack of standing. The amended complaint explicitly alleges concrete injuries—wasted time and emotional distress—resulting from MD Now and Medicredit's repeated efforts to collect an illegitimate debt. Because the amended complaint clearly establishes concrete harm under binding Eleventh Circuit precedent, the district court's dismissal on standing grounds should be reversed.

---

[2] The district court believed that a specific form of wasted time—consulting with an attorney—is insufficient for standing. That's wrong. *See Toste v. Beach Club at Fontainebleau Park Condo. Assn., Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022) (finding injury in fact where plaintiff wasted time in initial consultation with attorney to learn his legal rights regarding the debt). But it's also irrelevant. In addition, to consulting with an attorney, Mr. Bachiri spent time disputing the debt, wasted time that is indisputably sufficient for standing.

Respectfully submitted,

**NEWHART LEGAL, P.A.**
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd. #1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile: (561) 473-2946

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 2,649 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this reply brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

s/Darren R. Newhart